IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION


CHARLES H. SIMMONS,                           *
                                              *
            Plaintiff,                        *
                                              *
vs.                                           *        No. 3:10CV00226 SWW
                                              *
CITY OF JONESBORO, ARKANSAS;                  *
HAROLD PERRIN, in his Individual and          *
Official Capacities; and STEVE EWART,         *
in his Individual and Official Capacities;    *
                                              *
            Defendants.                       *


**Memorandum Opinion and Order**

Before the Court is defendant's motion for summary judgment to which plaintiff

responded.  For the reasons stated below, the motion is granted in part and denied in part.

**Background**

Plaintiff Charles H. Simmons began working for separate defendant City of Jonesboro,

Arkansas ("the City") in 2006 as a Jonesboro Economical Transit Service ("JETS") van driver.

His job was to pick up and deliver handicapped individuals based upon scheduled times and

places. Separate defendant Steve Ewart is the JETS transportation director and was Simmons's

supervisor.  On October 29, 2009, Ewart terminated Simmons for reporting late to work.

According to the City's employee handbook, which Simmons received a copy of when he was

hired, most situations involving disciplinary action are dealt with in a progressive manner but

some offenses can result in immediate termination.

In March 2007, Ewart's predecessor disciplined Simmons for hazardous driving.

According to witnesses, Simmons almost caused a serious wreck.[1]  On November 25, 2008,

Michael Black, Simmons's direct supervisor, counseled Simmons for allowing para-transit riders

to ride in the van for free.[2]   A third disciplinary, dated March 10, 2009, and signed by both

Black and Ewart, was for insubordination.  According to Ewart, Simmons allowed customers to

ride for free and missed a customer appointment. [3]  He warned Simmons that due to this incident

and his previous counseling, the next disciplinary action, if any, could result in a five-day

suspension without pay.[4]   The next disciplinary, dated October 1, 2009, was for failing to return

to the JETS base during down time between appointments.  According to defendants, para-transit

drivers are to return to base if there is more than a fifteen-minute interval between pick-up

activities.  Defendants advised Simmons that any further disciplinary action that might occur

within the next six months would result in the next level of disciplinary action being taken.[5]  On

October 6, 2009, Simmons was suspended for five days for failing to receive a fare from his

customer.  Defendants warned Simmons that any further violations of JETS policy would result

in his termination.[6]

Plaintiff Simmons appealed his suspension to the mayor, separate defendant Harold

Perrin.  The mayor investigated Simmons's complaints of "degradation, defamation of character

---

[1]Defs.' Br. in Supp. of Mot. Summ. J., Attach. 7 (doc. no. 10-7)

[2]*Id*., Attach, 8 (doc. 10-8).

[3]*Id*., Attach. 9 (doc. 10-9).

[4]*Id*.

[5]*Id*., Attach. 10 (doc. 10-10).

[6]*Id*., Attach. 11 (doc. 10-11).

and discrimination" and in memo dated October 22, 2009, found no discrimination had occurred

in Simmons's suspension or in other matters about which Simmons complained.[7]  On October

29, 2009, Simmons was late for work.  On October 31, 2009, Ewart signed a disciplinary notice

in which he referred to Simmons's recent suspension and then terminated Simmons for failure to

report to work on time.[8]  Plaintiff Simmons did not appeal his termination.

On or about March 12, 2010, Simmons filed a charge of race discrimination and

retaliation with the Equal Employment Opportunity Commission.  He received a right-to-sue

letter dated June 23, 2010, and filed a complaint in federal court on September 20, 2010.  He

brings this employment discrimination action pursuant to Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*;  42 U.S.C. § 1981; and 42 U.S.C. § 1983,

alleging his employer, the City of Jonesboro, Mayor Harold Perrin, and Steve Ewart,

individually and in their official capacities, terminated his employment on the basis of race and

retaliation.

### Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  Fed.R.Civ.P. 56(c).  As a prerequisite to summary judgment, a moving party must

demonstrate "an absence of evidence to support the non-moving party's case."  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for

---

[7]*Id.*, Attach. 14 (doc. 10-14).

[8]*Id.*, Attach. 12 (doc. 10-12).

summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).*  The non-moving party may not rest on mere allegations or denials of her pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed.R.Civ.P. 56(e)).

"[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 401 (8th Cir. 1995).*  The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita, 475 U.S. at 587* (citations omitted).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).*  "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## Discussion

Defendants move for summary judgment on the grounds that Simmons cannot establish that the reasons given for his termination are a pretext for discrimination and/or retaliation.  As to Simmons's claim that they violated his constitutional right to equal protection, defendants Perrin and Ewart argue they are entitled to qualified immunity.[9]

---

[9]Plaintiff states he does not oppose defendants' motion for summary judgment as to his claims against the City of Jonesboro and appears to abandon his official capacity claims against Ewart and Perrin.  *See* Pl's. Br. in Opposition to Defs.' Mot. Summ. J. at 5, n.2 (doc. 16).  Because plaintiff chose not to respond to defendants' arguments about the lack of evidence to support plaintiff's official capacity claims, and because the Court finds plaintiff presents no evidence that Ewart was the final policy maker,

1. Race Discrimination

To establish discrimination based on disparate treatment, Simmons must show, with circumstantial or direct evidence, that the complained-of conduct was motivated by race discrimination. Because Simmons presents no evidence that directly points to the presence of a discriminatory motive, the Court will analyze his discrimination claim under the three-part framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1972).[10]  Plaintiff must first establish a *prima facie* case of discrimination by showing that (1) he is a member of a protected class; (2) he met the legitimate expectations of his employer; (3) he suffered adverse employment action; and (4) similarly situated employees who were not members of his protected class were treated differently.  *See Philip v. Ford Motor Co.,* 413 F.3d 766, 768 (8th Cir.2005).

If Simmons makes a *prima facie* showing, the burden shifts to defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Then, the burden shifts back to Simmons to present evidence that the stated reason for the adverse action is pretext for discrimination. *Id.*  Specifically, Simmons must (1) discredit defendants' asserted reasons and (2) show that the circumstances permit a reasonable inference that race was the real reason for the adverse employment action.  *See Johnson v. AT & T Corp.,* 422 F.3d 756, 763 (8th Cir.2005). Under Title VII, the burden of persuading the trier of fact that an employer intentionally discriminated against the plaintiff always remains with the plaintiff.  *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–55 (1981); 42 U.S.C. § 2000e–2.

his official capacity claims will be dismissed.

[10]In the employment discrimination context, the elements of Title VII claims, § 1981 claims, and § 1983 equal protection claims are the same.  *Humphries v. Pulaski Cnty. Special Sch. Dist.*, 580 F.3d 688, 692 n.3 (8th Cir. 2009)(because Title VII and §§ 1981 and 1983 claims set forth substantially identical legal theories of recovery, same analysis applied to each).

Defendants argue that even assuming Simmons can establish a *prima facie* case, there is no evidence that their reason for terminating him was motivated by race. The evidence is undisputed that Simmons was late for work, that he had a number of previous disciplinaries, and he had been warned about the consequences of receiving another disciplinary. Plaintiff argues there is evidence in the record sufficient to raise genuine issues of material fact regarding defendants' explanation for the termination.

Plaintiff states that defendants disciplined him for being in an African American neighborhood between pick-ups. According to defendants, they asked their drivers to avoid an area of the city in which illegal drug activity was reportedly taking place. Plaintiff argues that defendants did not admonish white drivers to stay out of white neighborhoods where illegal drug activity took place. He says Ewart told him that "[a]ny time a black driver goes into a black neighborhood it raises suspicion."[11] Plaintiff also asserts that the reason he stopped in the suspect area was to safely use his cell phone to contact headquarters because the radio in his van was not working and he had not been issued a portable radio. He notes that the disciplinary report does not say anything about him being in an unsafe neighborhood; it charges him with not coming back to headquarters when he had more than fifteen minutes between stops. Plaintiff states that JETS management, including Ewart, previously told him that it was acceptable to do things like eat his lunch between stops.[12] Plaintiff argues this inconsistency is evidence that the real reason for his termination was race discrimination. Plaintiff also contends that he was

---

[11]Pl.'s Br. in Opp'n to Defs.' Mot. Summ. J., Ex. A at ¶ 9 (doc. 16-1).

[12]*Id*. at ¶ 12.

6

disciplined for certain infractions but white drivers were either not disciplined at all or received less severe sanctions.  He states he told Mayor Perrin about an incident where black employees complained about racial comments by white employees and instead of disciplining the white employees or even counseling them to stop, JETS management staff told the black employees to get over it or turn in their resignations.[13]   Plaintiff also said he complained to the mayor about a white female driver who had a history of infractions receiving a promotion even though he had more seniority and had been told that the white employee was going to be fired.[14]

The Court finds Simmons fails to establish a *prima facie* case of race discrimination because he cannot show that similarly situated white drivers were treated differently.  "[T]he test is rigorous for determining whether an employee is 'similarly situated,' as employees must be similarly-situated in all relevant respects for proper comparison." *Ledbetter v. Alltel Corporate Servs., Inc.,* 437 F.3d 417, 723 (8th Cir.2006).  Plaintiff presents no "'specific, tangible evidence' that employees who were 'similarly situated in all respects' to him received different treatment from [defendants]." *Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005) (citations omitted).  The Court further finds that Simmons fails to establish a genuine issue of fact that defendants' reason for terminating him was a pretext for race discrimination.

2.  Retaliation

In order to establish a *prima facie* case of retaliation, Simmons must establish that he was engaged in protected conduct, that he suffered an adverse employment action, and that the adverse action was causally linked to the protected conduct. *Wierman v. Casey's Gen. Stores,* 638

---

[13]*Id*. at ¶ 20.

[14]*Id*. at ¶ 21.

F.3d 984, 999 (8th Cir.2011).  Defendants argue that even assuming Simmons can establish a *prima facie* case of retaliation, they had a legitimate, non-retaliatory reason for terminating his employment.  Plaintiff asserts defendants' proffered reason is pretextual.

According to Simmons, on October 28, 2009, six days after he received Mayor Perrin's response to his appeal, Major Watts, the first shift route coordinator/dispatcher, told him he was not on the schedule for the following morning, and showed Simmons the schedule.  On the morning of October 29, 2009, Watts called Simmons and told him the schedule had been changed and that he should report to work.  Plaintiff said he was at work approximately 25 minutes after receiving Watts's call.  Plaintiff says that after his shift was over, Ewart called him into his office and told him he had spoken with City Hall and had been told it was okay to fire Simmons for being late to work. Plaintiff says he has never had issues with being late to work prior to that day.[15]

Plaintiff submits the declaration of Mark Huff, a former JETS driver and mechanic, who said that the schedule showed another driver operating the para-transit van the following day on the 4:45 a.m. to 12:45 p.m. shift that Simmons ordinarily operates, and that when Huff got to work the next morning, the schedule had been changed to show Simmons driving the van during that shift.[16]  Mr. Huff says he remembers Major Watts taking him by the arm, pulling him over to look at the schedule, and saying something like "Look here, they are trying to mess with Charles."[17]  He said Watts had just called Simmons to tell him he was on the schedule and

---

[15]*Id*. at ¶¶ 25-28.

[16]*Id*., Ex. B (doc. 16-2).

[17]*Id.*

Simmons arrived about 30 minutes late.[18]

Defendant Ewart said that when Simmons came in late to work, he told Ewart he was late because Major Watts, the crew chief, told Simmons he was not on the schedule for that day. Defendant Ewart says he checked with JETS management staff, and with Major Watts, and no one on the management staff had ever told Simmons he was not to come to work on October 29, 2009.[11] In the disciplinary notice terminating Simmons, Ewart noted that in spite of having many opportunities to do so, Simmons did not discuss with management staff on Wednesday, October 28, what "must have seemed to him to be a very abnormal change of his status for Thursday, 10/29/09." [12] Plaintiff Simmons points out that Ewart did not state in his declaration that Watts denied telling Simmons he was not on the schedule.

Plaintiff says he did not appeal his termination because Ewart told him his termination had been okayed by City Hall and his previous appeal had been unsuccessful. Defendant Perrin says that "[a]fter Mr. Simmons was terminated on October 30, 2009, by his department head, Steve Ewart, [Perrin] never was counseled, advised, or knew of the termination since Mr. Simmons did not avail himself of the appeals process . . ."[13]

The evidence is clear that Simmons engaged in protected conduct in appealing his disciplinary to the mayor and suffered an adverse employment action. "In terms of the causal connection, the plaintiff must show that the protected conduct was a 'determinative - not merely

---

[18]*Id.*

[11]Defs.' Br. in Supp. of Mot. Summ. J., Attach. 6  (doc. 10-6).

[12]*Id.*, Attach. 12 (doc. 10-12).

[13]*Id.*, Attach, 13 (doc. 10-13).

motivating - factor in the employer's adverse decision.'" *Tyler v. Univ. of Arkansas Bd. of Trustees*, 628 F.3d 980, 985 (8th Cir. 2011)(internal citation omitted).  The Court finds that the temporal connection as well as the questionable circumstances of his being late to work establishes an inference of retaliatory animus.  The Court finds Simmons has met his burden to establish a *prima facie* case of retaliation.

Defendants argue that even assuming Simmons can establish a *prima facie* case of retaliation, they had a legitimate, non-discriminatory reason for terminating him and Simmons has no evidence to create a genuine issue of fact that the reason was pretextual.

The Court finds Simmons has come forward with evidence sufficient to create a genuine issue of material fact whether Ewart's proffered explanation is merely a pretext for unlawful retaliation.  The evidence regarding the circumstances that resulted in Simmons being late for work as well as the temporal proximity between his appeal and his termination present a question for a jury.   The Court further finds that there is no credible evidence to establish that Mayor Perrin had knowledge of the circumstances involving Simmons reporting late to work or was involved in the decision to terminate him.  Therefore, Simmons's retaliation claim against the mayor is dismissed.

 Defendants assert they are entitled to qualified immunity. Qualified immunity protects "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). A qualified immunity analysis involves two questions. First, do the facts demonstrate that the defendants' conduct caused a violation of Simmons's statutory or constitutional rights. *Tuggle v.*

*Mangan,* 348 F.3d 714, 720 (8th Cir.2003). If the facts, viewed in a light most favorable to Simmons are sufficient to show a violation of his statutory or constitutional rights, then the second question is asked: Was the right violated one clearly established at the time? *Id.*

The Court finds that the evidence viewed in a light most favorable to Simmons is sufficient to establish Ewart violated Simmons's constitutional right not to be retaliated against for complaining about perceived discrimination.

## Conclusion

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [docket entry 9] is granted in part and denied in part.  Plaintiff's race discrimination claims are dismissed.  Plaintiff's official capacity claims are dismissed.  Plaintiff's claim of retaliation against Mayor Perrin is dismissed; plaintiff's claim of retaliation against Ewart remains for trial.

DATED this 15th day of August, 2012.


/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE